# NO. 12-17-00106-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RAYFORD BERNARD SMITH,* *APPELLANT* | *§* | *APPEAL FROM THE 85TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | *§* | *BRAZOS COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Rayford Bernard Smith appeals his conviction for continuous sexual abuse of a child. Appellant raises two issues on appeal. We affirm.

## BACKGROUND

The victim lived with her siblings and her mother at an apartment complex in Cameron, Texas. The victim and her mother had a "rocky" relationship. Appellant worked as the maintenance man at the complex. In 2011, Appellant began dating the victim's mother.

In August 2012, the victim and her family moved to College Station, Texas. Appellant moved in with them. On September 14, 2012, the victim's mother had a conversation with the victim's grandmother and aunt concerning her relationship with Appellant. The victim overheard them discussing their belief that her mother received a sexually transmitted disease (STD) from Appellant. The victim became very upset and told them that Appellant has "been having sex with me as well," and stated that they had sex "lots of times" while she lived in Cameron and College Station. The victim's mother and aunt took her to the Cameron Police Department and made a report, and they were subsequently sent to a hospital in Temple, Texas, where the victim had a sexual assault examination.

The victim told the sexual assault nurse examiner (SANE) that she had a long-term sexual relationship with Appellant. She reported that it last occurred on September 12 and 13, 2012. Since the victim reported intercourse that occurred within the previous ninety-six hours, the SANE nurse conducted a SANE exam, which revealed no acute injury to the victim's genital area or any STDs. However, the victim's underwear and vulva swab samples taken from the victim contained biological material coming from semen. Subsequent DNA testing of the samples revealed a partial DNA profile from the sperm cell fraction found on the victim's vulva swabs, showing that it was 2.81 billion times more likely that the DNA profile came from Appellant. The material taken from the victim's underwear showed a single-source DNA profile that was 2.88 quintillion times more likely to have come from Appellant.[1] The oral, vaginal, and perianal swabs revealed no semen. The forensic scientist performing the test acknowledged that it was possible for Appellant's DNA to transfer from other items to the victim's underwear while being washed in the same washing machine, and that it was possible for his DNA to transfer from her underwear to her vulva.

Investigating officers searched the College Station apartment and discovered areas on the floor that displayed suspected spots of bodily fluid near where the victim indicated that she and Appellant had sex. The investigating officer conducted a "presumptive test" on those areas, resulting in a presumptive positive for semen. The officer collected swab samples.

The forensic scientist who subsequently tested the carpet swab samples first conducted a differential extraction process, whereby the sperm cells in the samples are separated from the epithelial or skin cells, which often come from the vagina. The epithelial fraction showed that it was 1.53 septillion times more likely in the first sample, and 3.81 undecillion times more likely in the second sample, that the cells came from the victim, Appellant, and an unknown individual. The first epithelial sample excluded the victim's mother as a contributor, whereas the second epithelial sample was inconclusive. The sperm cell fraction in both samples came from a single individual, and it was 2.62 quintillion times more likely that the first sample came from Appellant, and 4.16 quintillion times more likely that the second sample came from Appellant. The scientist acknowledged that it is possible that the victim's DNA masked that of her mother, but he did not believe that it was an issue in this case. The scientist also noted that it was possible that the victim and the unknown individual's DNA transferred onto the carpet by walking on it, and that he could

---

[1] The forensic scientist also noted that the victim's own DNA was not found on her underwear, but that she had observed this in past cases.

not be one hundred percent sure that the DNA came from intercourse between the victim and Appellant.

Based on the investigation, Appellant was arrested and indicted for continuous sexual abuse of a young child. Appellant pleaded "not guilty" to the offense and the matter proceeded to a jury trial.

In addition to the aforementioned evidence, the victim testified at trial that, between September 2011 and September 2012, she and Appellant had sex approximately thirty times at Appellant's apartment in Cameron, that they had sex four or five times after moving to College Station, and that they had sex after she turned fourteen.[2] She testified that they had sex at the College Station apartment on the floor in the living room near the stairs, and upstairs on the floor near a wall that separates the master bedroom from the staircase. On cross-examination, the victim denied recanting the abuse allegations.

Appellant testified that he did not engage in any inappropriate sexual behavior with the victim at any point. He testified that the victim is a "good liar," that these allegations were false, and that the victim contrived this elaborate lie to "get back" at her mother and please her grandmother. He stated he had sex with the victim's mother in the apartment downstairs by the wall near the kitchen, by the front door, and upstairs. He testified that he would ejaculate on the victim's mother, including her gown, or on his hand, and that he noticed that some of it dropped on the floor. He explained that he cleaned himself and that he would place the clothing or towels containing his semen into the family's shared soiled clothes basket. On cross-examination by the State, Appellant testified that the victim knew where Appellant and the victim's mother had sex and told police where they would find Appellant's DNA mixed with hers. When confronted with the fact that his DNA was discovered on the victim's underwear, he explained that it must have transferred in the laundry.

The victim's mother testified as a defense witness and stated that she never noticed any inappropriate behavior. She testified that she did not believe the victim and that she was dishonest and unpredictable. She explained that the victim snuck boys in the apartment in the past. She initially stated that she never suspected that Appellant and the victim were in a relationship, and incorrectly recalled that she learned about the allegations via a phone call from the victim's grandmother. On cross-examination by the State, she clarified that she learned of the allegations

_____

[2] The victim's fourteenth birthday was on September 2, 2012.

during her discussion with the victim's aunt and grandmother concerning her having received an STD from Appellant. She also remembered telling one of the investigating officers that the victim would sneak out of the apartment to visit Appellant, that she believed the victim and Appellant appeared to be close, and that the victim had developed inappropriate feelings for Appellant. She also testified that other family members expressed their concerns about the relationship between the victim and Appellant. However, she stated her belief that the victim became too attached to Appellant, but she did not believe that any abuse occurred. She also testified that she and Appellant had sex downstairs in the living and in their bedroom on the carpet, and that Appellant would ejaculate onto the carpet. Finally, she testified that other people told her that the victim recanted.

The victim's brother testified that he never saw anything inappropriate occur between Appellant and the victim. He also testified that the victim did not have a good reputation for being truthful. Appellant also offered testimony from Kimberly Morton, who provided testimony that she spoke with the victim, who recanted. Morton testified that during the investigation, she heard the victim recant in front of a College Station police officer. She testified that she told Appellant's brother and sister, along with the victim's mother, that the victim recanted. She admitted that she did not tell anyone else even though she knew Appellant had been arrested.

After the parties rested, Appellant requested a lesser-included offense instruction for sexual assault of a child based on the September 2012 College Station incident that occurred after the victim turned fourteen, which the trial court denied. The jury found Appellant guilty of the offense, and after a punishment hearing, sentenced him to imprisonment for life. Appellant filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

## LESSER-INCLUDED OFFENSE INSTRUCTION

In his first issue, Appellant contends that the trial court erred when it refused to include his requested instruction for the lesser-included offense of sexual assault of a child for the offense that occurred after the victim turned fourteen.

### Standard of Review and Applicable Law

We review the trial court's denial of a lesser-included offense instruction for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). In determining whether an instruction on a lesser-included offense is required, we apply a two-step analysis. *See Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); *see also Feldman*

*v. State*, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002).  The first step requires the defendant to establish that the lesser-included offense is included within the proof necessary to establish the charged offense.  TEX. CODE CRIM. PROC. ANN. art 37.09 (West 2006); *Feldman*, 71 S.W.3d at 750; *Rousseau*, 855 S.W.2d at 672.  To satisfy the second step of the analysis, the record must include some evidence that would permit a jury to rationally find that, if guilty, the defendant is guilty only of the lesser-included offense.  *Feldman*, 71 S.W.3d at 750; *Rousseau*, 855 S.W.2d at 672.

In the first step, we compare the elements of the offense, as charged in the indictment or information, with the elements of the asserted lesser-included offense.  *State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim. App. 2013); *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007).  In relevant part, a person commits the offense of continuous sexual abuse of a young child if, during a period that is 30 or more days in duration, the person commits two or more acts of statutorily defined "sexual abuse" such as sexual assault of a child under Texas Penal Code Section 22.011, the victim is a child younger than 14 years of age, and the actor is 17 years of age or older.  TEX. PENAL CODE ANN. § 21.02(b), (c)(3) (West Supp. 2017).  Because acts of statutorily defined sexual abuse against children like sexual assault of a child are necessary predicates to the underlying offense, the sexual assault offense is a lesser-included offense of continuous sexual abuse of a child and satisfies the first step of the analysis.  *See Soliz v. State*, 353 S.W.3d 850, 854 (Tex. Crim. App. 2011).

In the second step, there must be some evidence directly germane to the lesser-included offense for the fact finder to consider before an instruction on a lesser-included offense is warranted.  *Bullock v. State*, 509 S.W.3d 921, 925 (Tex. Crim. App. 2016).  It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense.  *Id.*  We must consider all of the evidence admitted at trial, not just that presented by the defendant.  *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011).  The evidence must establish the lesser-included offense is a valid, rational alternative to the charged offense.  *Id.*  In other words, there must be some evidence that would permit the jury to rationally acquit the defendant of the greater offense and still convict him of the lesser offense.  *Sorto v. State*, 173 S.W.3d 469, 476 (Tex. Crim. App. 2005).  Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge.  *Goad*, 354 S.W.3d at 446.  However, we are not permitted to consider the credibility of the evidence and whether it conflicts with other evidence or is controverted.  *Id.* at 446–47.

5

"Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012).

**Discussion**

The parties do not dispute that the first step of the analysis is satisfied—that sexual assault of a child is a lesser-included offense of continuous sexual abuse of a young child as alleged in the indictment. *See Soliz*, 353 S.W.3d at 854. We agree.

Regarding the second step of the analysis, Appellant argues that the trial court should have given his requested lesser-included offense instruction for sexual assault, because the only conceivable credible physical evidence connecting him to any offense was for the alleged offense that occurred after the victim turned fourteen years old. Moreover, Appellant's argument continues, the remaining evidence is based entirely on the victim's testimony and her outcry, which he alleges is "suspect and discredited." Thus, Appellant concludes, the jury could have acquitted him of the continuous sexual abuse of a young child offense, which requires that the child be under the age of fourteen at the time of the abuse, and still found him guilty of sexual assault of a child.

Appellant's defense at trial was that he committed no acts of abuse. He testified in his own defense and presented evidence from other witnesses that the victim recanted and was not trustworthy, attempting to show that she fabricated all the acts of alleged sexual abuse. With respect to the assault that occurred after the victim turned fourteen, in addition to his denial, Appellant also attempted to refute the physical scientific evidence presented by the State. Specifically, Appellant argued that after having sex with the victim's mother in College Station, his semen likely dropped on the floor as well as her gown, on which he would clean himself, and he subsequently washed the gown with the family's dirty clothes, including the victim's underwear. Therefore, Appellant theorized, DNA from his semen transferred to the victim's underwear and her vulva as part of their ordinary laundry routine.

Appellant's denial does not entitle him to his requested instruction because it also denies the commission of the lesser offense. *See, e.g., Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001) ("A defendant's own testimony that he committed no offense, or testimony which otherwise shows that no offense occurred at all, is not adequate to raise the issue of a lesser-included offense."); *Saunders v. State*, 840 S.W.2d 390, 391–92 (Tex. Crim. App. 1992) (holding that if defendant denies commission of offense, charge on lesser offense not required).

Moreover, it is inapposite that the victim may have later made contradictory statements, because we may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). There must be affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense. *See Cavazos*, 382 S.W.3d at 385. This evidence pertaining to the victim's truthfulness furthers Appellant's defense that no sexual abuse occurred, but it does not negate continuous sexual abuse while also affirmatively raising only sexual assault of a child.

Thus, on the one hand, the State's evidence at trial is that Appellant committed numerous acts of sexual abuse, before and after the victim turned fourteen. On the other hand, Appellant offered evidence attempting to show that he committed no acts of sexual abuse. Although there is evidence that Appellant committed sexual assault of a child for the incident that occurred after the victim turned fourteen, the record does not rationally support a finding that he committed only that single instance of sexual abuse. Accordingly, there is no evidence from which a rational jury could both acquit Appellant of the greater offense of continuous sexual abuse of a young child while convicting him of the lesser-included offense of sexual assault of a child. In other words, considering all the evidence admitted at trial, there is no evidence that only one instance of sexual abuse occurred, or that if more than one instance of sexual abuse occurred, all of them occurred in less than a thirty-day period or after the victim's fourteenth birthday. Rather, the record establishes that the victim was sexually assaulted by Appellant numerous times within the statutorily-required period as alleged in the indictment. Therefore, we hold that the trial court did not abuse its discretion in denying Appellant's lesser-included offense instruction. *See Gonzales v. State*, No. 04-14-00100-CR, 2015 WL 5037692, at *3 (Tex. App.—San Antonio Aug. 26, 2015, pet. ref'd) (mem. op., not designated for publication) (holding that defendant not entitled to lesser-included offense instruction in similar case). Appellant's first issue is overruled.

## EXTRANEOUS OFFENSE INSTRUCTION

In his second issue, Appellant contends that he was egregiously harmed when the trial court commented on the weight of the evidence in its Texas Code of Criminal Procedure Article 38.37 instruction concerning the September 2012 College Station extraneous offense that occurred after the victim turned fourteen.

7

**Standard of Review and Applicable Law**

Texas Code of Criminal Procedure Article 38.37 Section 2(b) provides in relevant part as follows:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2–a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (West 2018). The offense of continuous sexual abuse of a young child is one of the offenses described by Subsection (a)(1). *See id.* § 2(a)(1)(B). Before evidence described by Section 2 may be introduced, the trial judge must:

> (1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt;
>
> and
>
> (2) conduct a hearing out of the presence of the jury for that purpose.

*See id.* § 2-a (West Supp. 2017). The hearing requirement is subject to the general requirement of preservation, and is therefore subject to forfeiture. *See Carmichael v. State*, 505 S.W.3d 95, 103 (Tex. App.—San Antonio 2016, pet. ref'd) (citing TEX. R. APP. P. 33.1; *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004)).

We review unpreserved jury charge error for egregious harm. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). Egregious harm is a "high and difficult standard" to meet, and such a determination must be "borne out by the trial record." *Id.* Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). To obtain a reversal for jury charge error, the defendant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986). In reviewing the record for egregious harm, the reviewing court should consider the following: (1) the entire jury charge, (2) the state of the evidence, including the contested issues and the weight of probative evidence, (3) the final arguments of the parties,

8

and (4) any other relevant information revealed by the record of the trial as a whole. ***Allen v. State***, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008).

**Discussion**

The trial court provided an extraneous offense instruction based on the College Station sexual assault that occurred after the victim turned fourteen. The court's instruction provided as follows:

> There has been introduced testimony and evidence of an extraneous offense other than the one charged in the indictment in this case, namely, Sexual Assault of a Child, in that the defendant, on or about the 13th day of September, 2012, in Brazos County, Texas, intentionally or knowingly caused the penetration of the sexual organ or mouth of [the victim], a child who was then and there younger than 17 years of age, by the defendant's sexual organ.

> Any testimony and evidence that the defendant has committed the separate offense of Sexual Assault of a Child was admitted for any bearing that testimony and evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant. You cannot consider such testimony and evidence unless you find and believe beyond a reasonable doubt the defendant committed the separate offense.

Appellant contends that the trial court did not include any qualifier language such as "if any" following the recitation of the allegations in the instruction, leaving the jury with the impression that the trial court believed the extraneous offense allegation was true. Accordingly, Appellant's argument continues, this was an improper comment on the weight of the evidence.

Appellant acknowledges that he did not object on this ground or the lack of an Article 38.37 hearing. Therefore, to the extent that he complains of the trial court's failure to hold a hearing in his brief, he has forfeited this complaint. *See **Carmichael***, 505 S.W.3d at 103. Nevertheless, Appellant argues that because the lesser-included offense instruction for the September 2012 sexual assault was denied for the same offense referenced in the extraneous offense instruction, he was egregiously harmed by the trial court's expression of apparent belief in its viability. We disagree.

The instruction merely expresses that there has been testimony and evidence introduced pertaining to the extraneous sexual assault. Furthermore, the second paragraph instructs the jury that it may not consider the testimony and evidence unless it finds that Appellant committed the extraneous offense beyond a reasonable doubt. This is a correct statement of the law concerning Article 38.37 extraneous offense evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 2(a)(1)(B), (b); 2-a. The court properly instructed the jury on the elements of the extraneous

9

offense as well as the underlying offense. Additionally, the charge properly instructed the jury on such relevant matters as reasonable doubt, the presumption of innocence, the prosecution's burden of proof, and the jury's exclusive role as the fact finder, including assessing the credibility of the witnesses and the weight to be given their testimony.

As part of his argument, Appellant contends that the physical scientific evidence pertaining to the extraneous offense provided the crucial link to the underlying offense, which was based solely on the victim's allegations. The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (West Supp. 2017); *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.). In any event, Article 38.37 allows the use of the extraneous offense for all relevant purposes, including character conformity. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b); *Baez v. State*, 486 S.W.3d 592, 598-99 (Tex. App.—San Antonio 2016, pet. ref'd).

In *Baez*, the jury charge instructed the jury that it could consider other extraneous acts of sexual misconduct between the defendant and another child other than the victim for all relevant purposes, including character conformity, provided they believed beyond a reasonable doubt that the defendant committed the extraneous offense. *Baez*, 486 S.W.3d at 598. Similar to the defendant in *Baez*, Appellant argues that the extraneous offense instruction in the jury charge is erroneous because it allowed the jury to consider other acts of sexual misconduct after the victim turned fourteen years old to support the underlying charge of continuous sexual abuse in the indictment. *See id.* at 598. However, like the charge in *Baez*, the jury charge in this case properly informed the jury of the elements of continuous sexual abuse and the underlying offenses supporting it, while separately identifying the extraneous sexual assault of a child offense, its elements, and how it may be considered by the jury. *See id.* at 598-99. The court in *Baez* held that the trial court properly included the instruction because the statute allows evidence to be admitted for all purposes including character conformity, and the jury charge in question properly informed the jury of the elements of the continuous sexual abuse offense including the individual acts and the relevant time period, so as to avoid any confusion by the jury. *See id.* We agree with the reasoning in *Baez*.

Accordingly, the trial court did not err or improperly comment on the weight of the evidence in including its extraneous offense instruction under Article 38.37, and in any event, Appellant was not egregiously harmed thereby. *See id.* Appellant's second issue is overruled.

10

## DISPOSITION

Having overruled Appellant's two issues, the judgment of the trial court is ***affirmed***.

**GREG NEELEY**
Justice

Opinion delivered October 24, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 24, 2018

NO. 12-17-00106-CR

**RAYFORD BERNARD SMITH,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 85th District Court

of Brazos County, Texas (Tr.Ct.No. 16-04025-CRF-85)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*